UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

THE BOARD OF EDUCATION OF THE
COUNTY OF NICHOLAS,

        Plaintiff,

v.                                  Civil Action No. 2:09-01318

H. A., a minor,
MONICA A., parent of H. A.,

        Defendants,


<u>MEMORANDUM OPINION AND ORDER</u>


Pending are two motions for summary judgment, one filed April 23, 2010, by plaintiff, the Board of Education of the County of Nicholas (the "Board"), and the other filed July 16, 2010, by defendants.  Also pending is defendants' motion for temporary injunction, filed December 2, 2010.

This action was previously referred to Mary E. Stanley, United States Magistrate Judge, who submitted her Proposed Findings and Recommendation ("PF&R") pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) on February 1, 2011.  The magistrate judge recommends that the Board's motion for summary judgment be denied and that the decision of Hearing Officer Patrick Lane, which underlies this dispute, be affirmed.  The magistrate judge further recommends that the defendants' motion for temporary

injunction be denied as moot.[1]

## I. Statutory Background

Congress enacted the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1400 et seq. ("IDEA"), "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A); see also Gadsby v. Grasmick, 109 F.3d 940, 942 (4th Cir. 1997). IDEA requires all states receiving federal funds for education to provide each child with a disability a free appropriate public education that is specifically designed to meet that child's needs.  20 U.S.C. § 1412(a)(1)(A).  IDEA creates a system of administrative procedures and proceedings "to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education."  Id. § 1415(a).

An individualized education program ("IEP") is the

---

[1] The magistrate judge made no recommendation regarding defendants' pending motion for summary judgment.

primary vehicle through which schools provide a particular
disabled student with a free appropriate public education.
School districts are required to develop an annual IEP for each
disabled child to effectuate the goal of providing the child with
a free appropriate public education.  See id. § 1412(a)(4).  An
IEP is a customized model of the child's curriculum and academic
goals.  It is designed to meet the child's educational needs and
to provide periodic monitoring of the child's progress.  Id. §
1414(d).  School officials develop the child's IEP upon
collaboration with teachers, experts, and the child's parents.
Id.

        If the parents of a disabled child believe that the
child's IEP is inadequate or inappropriate, they may seek an
administrative "impartial due process hearing" by filing a
complaint setting forth the alleged violation of IDEA.  Id. §
1415(b)(6), (d)(1).  After a complaint is filed, the parties are
entitled to an impartial due process hearing to be "conducted by
the State educational agency or by the local educational agency,
as determined by the State law or by the State educational
agency."  Id. § 1415(f)(1)(A); see also MM ex rel. DM v. Sch.
Dist. of Greenville Cnty., 303 F.3d 523, 535 (4th Cir. 2002).  If
the due process hearing is conducted by the state educational

agency, any aggrieved party may appeal the due process hearing officer's findings and decisions by bringing a civil action in state or federal court.  20 U.S.C. § 1415(i)(2)(A).  In West Virginia, due process hearings under IDEA are conducted by impartial due process hearing officers contracted by the West Virginia Department of Education.  126 W. Va. C.S.R. § 16, App. A.  Accordingly, parties in West Virginia may appeal directly to state or federal court.

At issue in this dispute is a due process hearing officer's decision that the IEP designed by the Board failed to provide defendant H.A. with a free appropriate public education.

## II.  Factual Summary

Defendant H.A. was born on June 28, 2000, and began kindergarten at Panther Creek Elementary School in Nicholas County, West Virginia, in the 2005-2006 school year.[2]  H.A. encountered learning and behavioral problems, prompting her mother, defendant Monica A., to arrange for a psychological evaluation of H.A.  On May 4, 2006, H.A. was evaluated by Crystal Knight, a supervised psychologist, and Michael Morrello, a

---

[2] The facts spelled out herein are drawn from the PF&R's proposed factual findings, to which neither party objected.

4

licensed psychologist, who diagnosed H.A. with autism.   On May
25, 2006, school personnel recommended that H.A. be further
evaluated, that her teachers prepare a modified academic program,
and that she repeat kindergarten.   The report card prepared by
the school for the 2005-2006 school year indicated that H.A.
needed one-on-one assistance in all areas.   As recommended, H.A.
repeated kindergarten in the 2006-2007 school year.

        On July 7, 2006, the school's psychologist, Mr. Lex de
Gruyl, evaluated H.A., observing that she regularly becomes
frustrated and shuts down upon encountering difficult tasks.   Mr.
de Gruyl noted in his report that he had to alter certain test
procedures to elicit responses sufficient for him to conclude
that H.A. could complete the tasks.   Nevertheless, Mr. de Gruyl
disagreed with the earlier diagnosis of autism, instead
concluding that H.A. simply functioned in the low average range
of cognitive ability when compared to other children her age.

        On September 18, 2006, H.A. was deemed eligible for an
IEP because she met the criteria for the speech/language area of
exceptionality.   Immediately thereafter, an IEP team met and
recommended that H.A. receive speech therapy.   Monica A.
requested that H.A. also receive one-on-one teaching, but the
Board refused.   The Board further concluded that H.A. did not

qualify for occupational therapy services.  In reaching these conclusions, the Board rejected the reports diagnosing H.A. with autism and instead relied on the evaluation of Mr. de Gruyl.

At the conclusion of the 2006-2007 school year, Monica A. received a report card from the school indicating that H.A. had difficulty taking turns and being around others; that H.A. needs to do less talking, whistling, and singing; and that she needs to work on sharing and being more independent.  The report also indicated that H.A. had failed to master nineteen of the approximately forty-six skills measured, including all of the subcategories under vocabulary and both fine and gross motor skills.  On August 2, 2007, H.A. was evaluated by William Hagerty, a psychologist engaged by Monica A., who found that H.A. was delayed in the area of behavior, including communication, age-appropriate self-help skills, motor skills, and social skills.  Mr. Hagerty diagnosed H.A. with Asperger's syndrome, a form of autism, and recommended special education and a behavior support plan.

On August 8, 2007, Monica A. filed a complaint alleging a number of IDEA violations and requested a due process hearing. In support of her complaint, Monica A. presented the various evaluations diagnosing H.A. with Asperger's or some form of

6

autism.  On September 26 and 27, 2007, Due Process Hearing Officer James Gerl conducted a due process hearing to determine whether H.A. was provided a free appropriate public education.

On November 14, 2007, Hearing Officer Gerl issued his decision, determining that the Board had violated IDEA, both procedurally and substantively, by (1) rejecting the diagnosis that H.A. suffered from autism, which rejection by the Board was based solely on an evaluation by the school's psychologist, Mr. de Gruyl, who ignored H.A.'s tendency to shut down in uncomfortable situations despite his having found that condition to exist; (2) by finding H.A. eligible for speech therapy only, despite her demonstrated need for social, communication, and behavior services; and (3) by predetermining H.A.'s IEP in advance of the IEP team meeting.  Hearing Officer Gerl emphasized that the Board "significantly impeded the right of [Monica A.] to participate in the decision-making process" by dismissing her input and ignoring her pleas for one-on-one instruction, in contravention of IDEA.  (Gerl Opinion at 29).  Hearing Officer Gerl further observed that the Board "caused a deprivation of educational benefits and a loss of [a free appropriate public education]" by "failing to address the clear needs of the student in social skills, behavior and communication, especially given

7

her tendency to shut down or withdraw when frustrated or upset."

(<u>Id.</u> at 30).

       As a result, Hearing Officer Gerl awarded the following relief:

- The Board was directed to pay for a comprehensive psycho-educational evaluation of H.A that emphasized her "educational needs and not the label for her condition." (<u>Id.</u> at 31-32). Hearing Officer Gerl specified that "the new evaluator should be apprised of the student's tendency to shut down and its potential effects on prior testing results." (<u>Id.</u> at 32). The evaluation was to identify all of H.A.'s educational needs.

- The parties were given until November 26, 2007, to select an evaluator to conduct the psycho-educational evaluation of H.A. Should the parties be unable to agree on an evaluator, Hearing Officer Gerl directed that counsel for Monica A. was to provide the names and addresses of three qualified evaluators to counsel for the Board, which had until December 3, 2007, to select one of the three evaluators identified by Monica A.

- H.A.'s IEP team was directed to convene and design an educational program for H.A. within two weeks of the receipt of the evaluator's report.

- H.A. was awarded two hours per week of compensatory education for a period of fifteen months. The compensatory education was to be provided by a certified teacher of autism in a one-on-one setting and "should focus on the student's tendency to shut down or withdraw in uncomfortable situations." (<u>Id.</u> at 34).

- Within one hundred days of Hearing Officer Gerl's decision, the Board was to submit a written report to the West Virginia Department of Education documenting all steps taken to comply with his decision.

By letter dated November 27, 2007, counsel for the Board wrote to counsel for Monica A. to confirm that Dr. Fred Krieg, an independent, licensed psychologist, would be conducting the evaluation ordered by Hearing Officer Gerl. The November 27 letter indicated that the Board had previously identified six potential evaluators, from whom Monica A. could choose. Counsel for the Board noted that, based on prior communications with counsel for Monica A., it "appear[ed]" the parties had selected Dr. Krieg. The Board thereafter scheduled an evaluation with Dr. Krieg, to be conducted on December 28, 2007, and January 8, 2008.

Based on his evaluation of H.A., Dr. Krieg issued a lengthy, twenty-three page report summarizing his findings. Among other things, Dr. Krieg's report discredits the medical sources who had previously diagnosed H.A. with Asperger's or as being autistic. Indeed, Dr. Krieg observed that "it hardly took anytime at all in this evaluation to see that [H.A.] does not have Asperger's Syndrome nor is she Autistic as she depends on interactions with other people." (Krieg Report at 16). Dr. Krieg acknowledged that H.A. "does have some problems in receptive and expressive language and . . . continues to need speech therapy," but concluded that she "does not need occupational therapy or physical therapy." (Id. at 22).

9

Finally, Dr. Krieg reiterated the following:

> [H.A.] is not autistic but does have significant
> emotional problems.  [H.A.] needs to be around peers
> and needs to be with other adults.  She needs a
> multitude of those people in order to overcome her
> anxiety disorder.  She should not need a one-on-one
> aide as that will only continue to make her more
> dependent.

(Id. at 23).

        In February 2008, as required by Hearing Officer Gerl's
decision, school officials formulated what they deemed to be a
revised IEP for H.A.  The February 2008 IEP indicated that H.A.
"plays well with the other children and is generally a happy
little girl."  (Feb. 2008 IEP at 3).  The IEP noted that H.A. had
a mild speech and language delay, but otherwise concluded that
her behavior would not impede her learning or that of others.
Accordingly, H.A. was placed in a general education environment
for 89% of the time and in a special education environment for
11% of the time so that she could receive speech therapy.  The
February 2008 IEP provided for no other behavioral or
communicative therapy.

        Pursuant to Hearing Officer Gerl's decision, the Board
submitted the February 2008 IEP and other documentation to the
West Virginia Department of Education to ensure compliance with
the decision's orders.  On April 24, 2008, the Department of

Education wrote to Kathy S. Sibbett, Director of Special
Education for the Board, and indicated that it had reviewed
documentation related to Hearing Officer Gerl's order and
"determined this documentation is acceptable as verification that
the order has been completed as per the Due Process Hearing
Officer's decision."  (Id. at 19).

On September 19, 2008, Monica A. requested a functional
behavioral assessment and an evaluation of H.A.'s social skills.
A functional behavioral assessment was conducted on October 9,
2008, indicating that H.A., who by this point was a second-grade
student at Panther Creek Elementary, had a history of low self-
confidence, crying, sucking on her thumb, and difficulty
socializing with peers.  The evaluators, consisting of H.A.'s
teacher, a special educator, and the school's counselor, also
observed that H.A. gets upset easily, often shuts down and
refuses to work, and needs significant positive reinforcement
simply to begin an assigned task.  The evaluators concluded that
H.A.'s low self-confidence made it difficult for her to be
completely responsible for her behavior and recommended that her
teachers implement a reward system.

On October 17, 2008, a revised IEP was prepared for
H.A.  The October 2008 IEP noted that H.A. "is a delightful 2nd

11

grade student" and is "currently working on grade level material
with her same age peers and progressing." (Oct. 2008 IEP at 4).
The IEP acknowledged that "[s]ometimes [H.A.]'s behavior in class
does not allow her to complete her work" and that she sometimes
"will scribble all over her papers and not work on them." (Id.).
Under the October 2008 IEP, H.A. was to spend 81% of her time in
the general education environment and 19% of her time in special
education with receipt of speech therapy. The IEP did not
mention the September 2008 functional behavioral assessment.

        In February 2009, Monica A. indicated to the Board that
she would not attend an upcoming IEP meeting because social
skills had not been placed in H.A.'s IEP. On February 20, 2009,
school personnel conducted an IEP meeting in Monica A.'s absence,
concluding that the October 2008 IEP should be continued.
Specifically, the IEP team cited the September 2008 behavioral
assessment as proof that H.A.'s "social functioning levels were .
. . in the average range in all areas." (Feb. 2009 IEP at 3).
The February 2009 IEP included the following narrative regarding
H.A.'s behavior:

        [H.A.] is a delightful 2nd grade student. [She] enjoys
        chatting with her peers during non-instructional times.
        . . . She offers to help other students and share
        school supplies with them. [H.A.] does suck her thumb
        quite often which is not appropriate for her age.
        Behavior has much improved this year. She appears to

> be more cooperative, willing to work, and displays less
> frustration.  She attempts all her work without crying
> or scribbling on her paper.  She is currently working
> on grade level material with her same age peers and
> progressing.  [H.A.] can work independently if she
> feels comfortable with what she is working on.

(Id. at 4).  The IEP team elected to continue the reward system
it had developed in the October 2008 IEP and determined that H.A.
should continue to spend 81% of her time in the general education
environment and 19% of her time in special education with receipt
of speech therapy.

### III.  Procedural History

On July 14, 2009, Monica A. filed a second due process
complaint against the Board, alleging that the Board had, among
other things, (1) failed to comply with Hearing Officer Gerl's
decision by requiring the use of an evaluator (Dr. Krieg) who,
she maintained, was not independent from the Board; and (2)
denied H.A. a free appropriate public education by failing to
include special education and related services in the IEP that
would address her behavioral, social, and communication needs.

On September 17, 2009, Due Process Hearing Officer
Patrick Lane conducted an administrative hearing regarding Monica
A.'s complaint, at which the parties presented twelve witnesses
and offered more than sixty exhibits into evidence.  Although Dr.

13

Krieg's evaluation of H.A. was introduced as evidence, neither party proffered his testimony during the hearing.  On October 22, 2009, Hearing Officer Lane issued his decision, making three findings that the Board challenges in this action.

First, Hearing Officer Lane concluded that the Board had the burden of proving both that it complied with Hearing Officer Gerl's decision and that it provided H.A. with a free appropriate public education.  To support this conclusion, Hearing Officer Lane cited West Virginia Department of Education Policy 2419 ("Policy 2419"), entitled "Regulations for the Education of Exceptional Students" and found at 126 C.S.R. § 16. Policy 2419 provides, in pertinent part, that

> [t]he burden of proof as to the appropriateness of any proposed action, as to why more normalized placement could/could not adequately and appropriately service the individual's education needs, and as to the adequacy and appropriateness of any test or evaluation procedure, will be upon the school personnel recommending the matter in contention.

126 W. Va. C.S.R. § 16, Ch. 11, § 3(A).

Second, Hearing Officer Lane determined that the Board had failed to comply with Hearing Officer Gerl's directive that H.A. be assessed by an independent evaluator.  Specifically, Hearing Officer Lane questioned the independence of the evaluation performed by Dr. Krieg, finding that the Board had

14

rejected each of Monica A.'s proposed evaluators and instead "forced Dr. Kreig" upon her in an effort to "seek out evaluations with which it agreed."  (Lane Opinion at 10).  Hearing Officer Lane also found that Dr. Kreig's evaluation lacked credibility, inasmuch as it was "inconsistent with numerous other evaluations."  (Id.).  Given this inconsistency, Hearing Officer Lane found it "disappointing" that the Board had failed to call Dr. Kreig to defend his conclusions.  (Id.).  Accordingly, Hearing Officer Lane ordered that the Board again provide an independent evaluation of H.A., with the evaluator to be chosen by Monica A., and revise H.A.'s IEP based upon the evaluation.

Third, Hearing Officer Lane found that the Board had denied H.A. a free appropriate public education by failing to modify her IEP to add services to remedy her deficiencies in social skills, behavior, and communication.  Instead, according to Hearing Officer Lane, the Board

> continued using the deficient IEP without modification
> for eleven months after the HOD [hearing officer's
> decision] was issued.  When questioned on this point,
> [Board] employees replied that communications and
> behavior were not affecting [H.A.'s] education.  These
> replies ignored the numerous disciplinary actions taken
> and the student's continuing reluctance to communicate
> effectively as noted even by Dr. Kreig.  There is no
> valid excuse for simply ignoring the needs of the
> student after being Ordered to take note of and
> remediate such needs.

15

(Id. at 10-11).  Accordingly, Hearing Officer Lane further awarded two hours per week of compensatory education and related services in the areas of social/communication/behavior needs for a period of eleven months in addition to the original fifteen months ordered in Hearing Officer Gerl's decision.

On December 8, 2009, the Board filed this action to contest the findings made by Hearing Officer Lane.  Specifically, the Board seeks an order "reversing the decision of [Hearing Officer Lane] and ordering that H.A. does not need further evaluation or compensatory education in the areas of social/communication/behavior needs, and that [H.A.]'s IEP be implemented in accordance with the Board's proposed program." (Compl. ¶ 25(3)).  On April 23, 2010, the Board moved for summary judgment, contending that the burden of proof was erroneously placed on it through misinterpretation of Policy 2419 and in direct contravention of the Supreme Court's decision in Schaffer v. Weast, 546 U.S. 49 (2005).  The Board further contends that it complied with Hearing Officer Gerl's decision requiring that it provide an independent evaluation of H.A.  Finally, the Board maintains that it did not deny H.A. a free appropriate public education, as it modified her IEP to meet the student's behavioral, social, and communication needs.  In their response

16

to the Board's motion, defendants, acting <u>pro</u> <u>se</u>, contend that Hearing Officer Lane's decision is supported by a preponderance of the evidence and should be affirmed.  Defendants therefore request that summary judgment be granted in their favor.

On June 15, 2010, the court referred this action to the magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B).  The magistrate judge issued her PF&R on February 1, 2011.  As discussed in more detail below, the PF&R recommends that Hearing Officer Lane's decision be affirmed, that the Board's motion for summary judgment be denied, and that defendants' motion for temporary injunction be denied as moot.  On February 14, 2011, the Board objected to the PF&R.  Defendants neither objected to the PF&R nor responded to the Board's written objections.

### IV.  Governing Standard

In a judicial proceeding under IDEA, a reviewing court must conduct an independent review of the administrative record.  <u>See</u> <u>MM ex rel. DM v. Sch. Dist. of Greenville Cnty.</u>, 303 F.3d 523, 530-31 (4th Cir. 2002).  In so doing, the court must give "due weight" to the underlying administrative proceedings.  <u>Doyle v. Arlington Cnty. Sch. Bd.</u>, 953 F.2d 100, 103 (4th Cir. 1991).  Indeed, "findings of fact made in administrative proceedings are

17

considered to be prima facie correct, and if a reviewing court fails to adhere to them, it is obliged to explain why."  <u>MM ex rel. DM</u>, 303 F.3d at 531.  The reviewing court is not to "substitute [its] own notions of sound educational policy for those of local school authorities."  <u>Hartmann v. Loudoun Cnty. Bd. of Educ.</u>, 118 F.3d 996, 999 (4th Cir. 1997).

The Board's complaint in this action challenges only the findings and decision of Hearing Officer Lane.  Accordingly, in resolving this dispute, the court is obliged to conduct an independent review of Hearing Officer Lane's decision, affording due weight to his findings of fact.  <u>See</u> <u>Doyle</u>, 953 F.2d at 105 (specifying that "findings of fact by the hearing officers . . . are entitled to be considered prima facie correct").  Inasmuch as neither party challenged the earlier decision of Hearing Officer Gerl, the appropriateness of his factual findings and conclusions of law is not before the court.  <u>See</u> 126 W. Va. C.S.R. § 16, Ch. 11, § 3(M) ("A decision made in a hearing is final unless a party to the hearing appeals the decision through civil action.").

V.  Analysis

A.  Burden of Proof

The Board first objects to the magistrate judge's

18

proposed finding that Hearing Officer Lane properly allocated the burden of proof at the second due process hearing.  The magistrate judge acknowledged that, pursuant to the Supreme Court's decision in Schaffer v. Weast, 546 U.S. 49 (2005), the burden of proof in an administrative hearing challenging an IEP is on the party seeking relief (here, H.A. and Monica A.).  This, of course, is the rule generally followed in civil litigation and is referred to in Schaffer as the default rule.  Id. at 61.  The magistrate judge concluded, however, that Policy 2419 "overrides the default rule expressed in Schaffer" and instead places the burden of proof on the Board.  (PF&R at 34).  The magistrate judge further concluded that,

> [e]ven if the burden should have been upon Defendants at the administrative level, as challengers of [the Board's] actions, Defendants offered extensive evidence at the hearing and showed that [the Board] failed to comply with the previous hearing decision related to an independent examination and to the inclusion of special education and related services in the IEP, which would address H.A.'s needs for behavioral, social and communication needs.

(Id.).  Accordingly, the magistrate judge recommends upholding Hearing Officer Lane's allocation of the burden of proof.

In Schaffer, the Supreme Court held that "[t]he burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief."  546 U.S. at

19

**62.  The Court acknowledged in closing that some states "have laws or regulations purporting to" put the burden always on the school district.  Id. at 61.  The state at issue in Schaffer had not adopted such a regulation, however, so the Court declined to decide whether states "may, if they wish, override the default rule."  Id. at 61-62.**

**The magistrate judge, in concluding that the burden of proof rested with the Board, determined that West Virginia had adopted a rule or regulation (namely, Policy 2419) that places the burden of proof on the school personnel in situations such as this one.  (PF&R at 33).  By contrast, the Board contends that the magistrate judge "incorrectly interpreted Policy 2419," which the Board maintains is inapplicable in this situation.  (Objections at 4).  Accordingly, the Board asserts that the default rule announced in Schaffer – that the burden rests with the party seeking relief – applies here and that Hearing Officer Lane thus erred in allocating the burden of proof.**

**The court agrees with the magistrate judge that, assuming states may override the default rule announced in Schaffer (an unresolved issue), Policy 2419 placed the burden of proof on the Board in the second due process hearing.  As earlier quoted, Policy 2419 provides that the burden of proof as to the**

20

appropriateness of (1) any proposed action, as to why more normalized placement could adequately and appropriately service the individual's education needs, and (2) as to the adequacy and appropriateness of any test or evaluation procedure, "will be upon the school personnel recommending the matter in contention." 126 W. Va. C.S.R. § 16, Ch. 11, § 3(A).  From this broad language, it is plain that the legislature intended to place the burden of proof on the school personnel in due process hearings involving issues such as those in this case.  Inasmuch as the Board in the second due process hearing was defending both a proposed action (the IEP for H.A.) and an evaluation procedure (the evaluation performed by Dr. Krieg), Policy 2419 placed the burden of proof on the Board.  Accordingly, the court concludes that Hearing Officer Lane properly allocated the burden of proof.

     The court also agrees with the magistrate judge that, assuming the burden should have rested with H.A. and Monica A. at the administrative level, the record conclusively demonstrates that Hearing Officer Lane would have reached the same conclusion, rendering harmless any error in allocating the burden of proof. Specifically, and as discussed in more depth in parts B and C that follow, Hearing Officer Lane determined that the Board failed to comply with Hearing Officer Gerl's directive that it

secure an independent evaluation of H.A., in large part because
the Board rejected each of Monica A.'s proposed evaluators.
(Lane Opinion at 10).  Nothing in the record undermines this
determination.  Even the evidence presented by the Board - its
November 27, 2007, letter to Monica A. indicating that the
parties had agreed that Dr. Krieg would conduct the evaluation -
discloses that it was the Board that provided a list of possible
choices to Monica A.  Inasmuch as Hearing Officer Gerl directed
that the Board was to choose from potential evaluators provided
by Monica A., it is plain enough that defendants satisfied the
burden of proving lack of compliance with his decision in this
respect.

        Similarly, it is clear that, regardless of the burden
of proof, Hearing Officer Lane would have reached the same
conclusion concerning the sufficiency of the IEP prepared for
H.A.  As pointed out by Hearing Officer Lane, Hearing Officer
Gerl specifically found that H.A.'s IEP was deficient inasmuch as
it offered H.A. speech therapy only.  The Board did not challenge
this finding.  Indeed, the evidence before Hearing Officer Lane
demonstrates that the Board continued to offer H.A. only speech
therapy in the eleven months following Hearing Officer Gerl's
decision.  Inasmuch as there is no evidence in the record

                            22

suggesting that the Board remedied the IEP as directed by Hearing Officer Gerl, the court concludes that Hearing Officer Lane's decision regarding the IEP was unaffected by his allocation of the burden of proof.

B.    Independent Evaluation

        The Board next objects to the magistrate judge's recommendation that the court uphold Hearing Officer Lane's finding that it failed to secure an independent evaluation of H.A. as directed by Hearing Officer Gerl.  (Objections at 6). The Board contends that "it followed the procedure set forth in [Hearing Officer Gerl's] Order . . . and acted appropriately in acquiring an independent psycho-educational evaluation."  (Id.). Specifically, the Board maintains that it complied with the selection procedure set forth in Hearing Officer Gerl's decision inasmuch as Monica A. agreed that Dr. Krieg was a suitable evaluator.  Accordingly, the Board requests that Hearing Officer Lane's finding in this regard be overturned.

        The court agrees with the magistrate judge that Hearing Officer Lane's finding that the Board interfered with the selection procedure is supported by a preponderance of the evidence and is entitled to due weight.  To be sure, the November

23

27, 2007, letter from the Board to counsel for Monica A. indicates that Monica A. agreed that Dr. Krieg would perform the evaluation.  But the record suggests that Monica A. so agreed only after the Board rejected her own proposals.  Monica A. presented evidence that she identified two licensed psychologists who could conduct H.A.'s evaluation, but that the Board rejected each.  According to evidence presented, the Board rejected one of the proposed evaluators, a state-licensed school psychologist, simply because the Board could not determine whether this psychologist had seen H.A. before.  In a letter to the West Virginia Department of Education, dated April 10, 2008, Monica A. indicated that she agreed to use Dr. Krieg for the evaluation only after "it became clear that the [Board] was not going to use one of our psychologists."  (PF&R at 19).

The Board's selection process contravened both the letter and spirit of IDEA, as well as Hearing Officer Gerl's directive that the parties mutually agree on an independent evaluator and, in the absence of agreement, that the evaluation be chosen by the Board from evaluators offered by Monica A.[3]  As

---

[3] The Board understandably did not challenge Hearing Officer Gerl's authority to so direct, inasmuch as Policy 2419 specifically authorizes a hearing officer to order independent evaluations, with the evaluator chosen by the party seeking relief (here, H.A. and Monica A.).  See 126 W. Va. C.S.R. § 16,

the Supreme Court recognized in <u>Schaffer</u>, the core of IDEA "is the cooperative process that it establishes between parents and schools."  546 U.S. at 53.  Indeed, "Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process, . . . as it did upon the measurement of the resulting IEP against a substantive standard."  <u>Bd. of Ed. of Hendrick Hudson Central Sch. Dist. v. Rowley</u>, 458 U.S. 176, 205-06 (1982).  Hearing Officer Gerl recognized the importance of this cooperative process, remarking throughout his decision that the Board, by summarily dismissing the input of Monica A., had denied her any opportunity to participate in the IEP process.  As a result, Hearing Officer Gerl ordered that the parties collaborate in selecting an evaluator and that the Board choose from a list provided by Monica A. in the event they were unable to agree.  Hearing Officer Lane found, however, that the Board again summarily rejected Monica A.'s input.  Inasmuch as this finding is supported by a preponderance of the evidence, it is

---

Ch. 10, § 7(A) (providing that hearing officer may order "independent educational evaluation"); <u>Id.</u>, Glossary (defining "independent educational evaluation" as evaluation conducted by evaluator "who is selected by the party seeking the independent evaluation").

entitled to due weight.[4]

C.   Free Appropriate Public Education

        The Board next objects to the magistrate judge's
recommendation that the court uphold Hearing Officer Lane's
conclusion that the Board denied H.A. a free appropriate
education.  Hearing Officer Lane reached this conclusion after
finding that the Board failed to modify H.A.'s IEP following the
first due process hearing.  Specifically, Hearing Officer Lane
stressed that the Board "continued using the deficient IEP
without modification for eleven months after the HOD [hearing
officer's decision] was issued."  (Lane Opinion at 10-11).
Hearing Officer Lane could find "no valid excuse for simply
ignoring the needs of [H.A.] after being Ordered to take note of
and remediate such needs" and that, as a result, the Board had
denied H.A. a free appropriate public education.  (Id. at 11).

        The magistrate judge found that a preponderance of the

---

        [4] Similarly, the court rejects the Board's objection to the
PF&R's proposed finding that the Board engineered a favorable
evaluation.  As found by Hearing Officer Lane, the Board
influenced Dr. Krieg's evaluation not by requesting that he reach
any specific conclusion, but by unreasonably rejecting Monica
A.'s proposed evaluators and securing an evaluator of its own
choosing.  As explained, that finding is supported by a
preponderance of the evidence and entitled to due weight.

evidence supported Hearing Officer Lane's conclusion.
Specifically, the magistrate judge noted that, despite Hearing
Officer Gerl's determination that H.A.'s IEP was deficient and
that she had a tendency to shut down or withdraw, the Board made
no mention of a behavioral assessment at the next IEP meeting.
(PF&R at 44).  The magistrate judge further observed that "[i]t
was not until October of 2008, almost a year [after Hearing
Officer Gerl's decision], that the [Board] administered a
behavioral assessment."  (Id.).  The magistrate judge concluded
that, "[b]ecause [the Board] did not comply with Hearing Officer
Gerl's decision in evaluating H.A.'s behavioral needs for
approximately eleven months, Hearing Officer Lane's decision to
award compensatory services [for an additional 11 months] in
social skills, behavior and communication needs is supported by a
preponderance of the evidence and entitled to due weight."  (Id.
at 45-46).

        The court agrees with the magistrate judge that a
preponderance of the evidence supports Hearing Officer Lane's
finding that the Board denied H.A. a free appropriate public
education.  In contending otherwise, the Board seems to suggest
that it complied with Hearing Officer Gerl's decision simply by
securing an evaluation of H.A.  (Objections at 19 ("Because the

27

[Board] timely evaluated the student consistent with Hearing
Officer Gerl's decision, and because the student['s] behavioral,
communicative, and social skills needs were adequately addressed
by the student's IEP, the [Board] therefore crafted an IEP
designed to confer meaningful educational benefit for the
student.")).  Hearing Officer Gerl awarded more than just an
evaluation.  Indeed, his order makes clear that, "[i]n addition
to a new evaluation, . . . compensatory education is also
needed."  (Gerl Opinion at 32).  Hearing Officer Gerl specified
that the compensatory education "shall be provided by a certified
teacher of autism in a one-on-one setting" and "should focus upon
the student's tendency to shut down or withdraw in uncomfortable
situations, any other social or communication problems the
student may be encountering, and any behavioral issues relevant
to this student."  (Id. at 34).  Put simply, Hearing Officer Gerl
found that H.A.'s IEP, which provided for speech therapy only,
was inadequate and failed to provide her with a free appropriate
public education.  (Id. at 16).

        Notwithstanding Hearing Officer Gerl's decision, there
was no mention of H.A.'s behavioral problems at the next IEP
meeting on February 29, 2008.  Indeed, the February 2008 IEP
indicated that H.A.'s behavior did not impede her learning and

provided H.A. with speech therapy only.  As found by Hearing Officer Lane and noted by the magistrate judge, the Board did not begin to include any type of behavior assessment and therapy until the fall of 2008, approximately eleven months after Hearing Officer Gerl's decision.  Inasmuch as the evidence suggests that the Board continued an IEP already deemed deficient, the court concludes that Hearing Officer Lane's determination that the Board failed to provide a free appropriate public education is supported by a preponderance of the evidence and entitled to due weight.

D.   Other Objections

        The Board poses two final objections that can be disposed of with little discussion.  First, it "objects to the Magistrate Judge's decision to disregard evidence that it complied with Hearing Officer Gerl's decision," namely, the April 2008 letter of the West Virginia Department of Education deeming the Board to be compliant with Hearing Officer Gerl's decision. (Objections at 13).  Second, it "objects to the Magistrate Judge's proposed finding that Dr. Krieg did not render an independent evaluation because he did not testify during the due process hearing."  (Id. at 14).

As to the first objection, the magistrate judge simply did not "disregard" the Department of Education's letter.  To the contrary, the magistrate judge acknowledged the letter and the Board's reliance thereon as proof that it complied with Hearing Officer Gerl's decision.  The magistrate judge pointed out, however, that the Board offered no support for its position that a finding by the Department of Education conclusively resolves the issue in favor of the Board.  Indeed, the Board has yet to explain why the state agency's conclusion, which was apparently made after reviewing documents submitted to it by the Board, should be elevated above the findings of Hearing Officer Lane, who heard testimony and examined evidence submitted by both parties.  Accordingly, the court finds this objection to be without merit.

Turning to the second objection, the Board again misinterprets the PF&R.  At no point does the magistrate judge recommend finding that Dr. Krieg failed to render an independent evaluation "because he did not testify."  (Id. at 14).  Rather, the magistrate judge simply pointed out that Hearing Officer Lane was justified in questioning Dr. Krieg's evaluation, not only because he did not testify but also because his conclusions greatly differed from those of the other evaluators and because

30

he was selected by the Board after the Board failed to make the selection from the recommendations by Monica A.  Accordingly, the court finds the Board's final objection to be without merit.

### VI.  Conclusion

Accordingly, following a de novo review, the court concludes that the magistrate judge's recommended disposition is correct.  It is therefore ORDERED as follows:

1.  That the magistrate judge's PF&R be, and it hereby is, adopted and incorporated herein in its entirety;

2.  That the decision of Hearing Officer Lane be, and it hereby is, affirmed;

3.  That the Board's motion for summary judgment be, and it hereby is, denied;

4.  That defendants' motion for summary judgment be, and it hereby is, granted;

5.  That defendants' motion for temporary injunction be, and it hereby is, denied as moot; and

6.  That this action be, and it hereby is, dismissed and stricken from the docket.

31

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: March 9, 2011

John T. Copenhaver, Jr.
United States District Judge